IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| MICHELLE SMITH,<br><br>    Plaintiff,<br><br>v.<br><br>WAL-MART STORES EAST, LP,<br><br>    Defendant. | Civil Action No.<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

COMES NOW, Plaintiff Michelle Smith ("Plaintiff" or "Ms. Smith"), by and through undersigned counsel, and files this Complaint, showing the Court as follows:

### NATURE OF COMPLAINT

1.

Plaintiff brings this action for injunctive and declaratory relief, compensatory and punitive damages, liquidated damages, and reasonable attorney fees for Defendant's violation of her rights under the Family and Medical Leave Act, 29 U.S.C. § 2601, *et. seq.* ("FMLA"), Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and 42 U.S.C. § 1981.

1

## JURISDICTION AND VENUE

2.

Plaintiff invokes the jurisdiction of this court pursuant to 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. § 1981, and 29 U.S.C. § 261(b)

3.

The unlawful employment practices alleged in this Complaint were committed within this district.  In accordance with 28 U.S.C. § 1391 and 42 U.S.C. §1981, venue is appropriate in this Court.

## PARTIES

4.

Plaintiff is a white female citizen of the United States of America and is subject to the jurisdiction of this Court.

5.

At all times relevant Defendant Wal-Mart Stores East, LP was qualified and licensed to do business in Georgia, and at all times material hereto has conducted business within this District.

6.

Defendant may be served with process by delivering a copy of the summons and complaint to their Registered Agent, The Corporation Company, located at 410 Peachtree Parkway, Sute 4245, Cumming, GA 30041.

7.

Plaintiff is considered an "eligible employee" within the meaning of the FMLA, 29 U.S.C. §2601 *et seq.*

8.

Defendant is an "employer" within the meaning of the FMLA, 29 U.S.C. §2601 *et seq*, which includes a "successor in interest."

9.

Plaintiff worked at least 1250 hours for Defendant within the 12 months preceding her request for medical leave pursuant to the FMLA.

10.

Plaintiff was employed by Defendant for more than twelve (12) months.

11.

Plaintiff was employed by Defendant at a worksite with 50 or more employees within 75 miles of that worksite.

12.

During all times relevant hereto, Defendant has employed fifteen (15) or more employees for the requisite duration under the Title VII. Defendant is therefore covered under Title VII in accordance with 42 U.S.C. § 2000e(b).

## ADMINISTRATIVE PROCEDURES

13.

Plaintiff has timely fulfilled all conditions precedent necessary to proceed with this cause of action under Title VII.

14.

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on February 2, 2025; the EEOC issued its Notice of Right to Sue on September 29, 2025. Plaintiff timely files this action within ninety (90) days of receipt of the Notice of Right to Sue from the EEOC.

## FACTUAL ALLEGATIONS

15.

Plaintiff, a white woman, was employed by Defendant at its store in Sandersville, Georgia (Store #1143) from on or about December 11, 2019, until her termination on August 15, 2024.

16.

Throughout her nearly five years of employment, Plaintiff was a dedicated employee who worked in multiple departments as requested by management.

17.

Defendant maintains a "point-based" attendance policy, whereby employees accumulate points for absences. Under this policy, an employee may be, but is not necessarily, subject to termination upon accumulating five (5) or more points.

18.

Defendant's managerial employees, including at the store level and above, have the discretion not to terminate an employee even if they have accumulated five (5) or more attendance points.

19.

In or around October 2023, Plaintiff's adult daughter suffered from a serious health condition, specifically double pneumonia that became septic, requiring her to be placed in the Intensive Care Unit ("ICU").

20.

Plaintiff informed her General Manager, Jonathan Ryan Smith ("Mr. Smith"), of her daughter's condition and her need to be with her.

21.

Mr. Smith told Plaintiff to go be with her daughter, stating, "do I look like a point man? Why are you here? I'll take care of it."

22.

Relying on Mr. Smith's assurances, Plaintiff requested FMLA leave to care for her daughter.

23.

Defendant's Human Resources representative, Deborah Tanner, who is Black, unlawfully interfered with and denied Plaintiff's FMLA request.

24.

Ms. Tanner told Plaintiff she was not eligible for FMLA leave because her daughter was an adult who did not live with her, stating, "I can't do FMLA for my daughter because she doesn't live with me and I should have known that... she's not your child, she's grown, you should know that."

25.

As a direct result of Defendant's unlawful denial of her FMLA leave request, Plaintiff was assessed 4.5 attendance points.

26.

Defendant, primarily through its HR representative, Ms. Tanner, fostered a hostile work environment for white employees.

27.

Around February 2024, Ms. Tanner stated to Plaintiff that "white people are lazier than black people" and that Black people "have to work harder to prove theirs."

28.

Plaintiff and other employees were terrified to approach Ms. Tanner for human resources assistance due to her hostile demeanor and discriminatory animus.

29.

Defendant's managers and representatives engaged in a pattern of discriminatory conduct. For instance, Ms. Tanner cut the hours of a white employee with epilepsy, stating "I can't give you full-time, because when I do, you don't show up for work, because you claim you have a seizure."

30.

In or around June 2024, Plaintiff contracted COVID-19, a serious health condition under the FMLA, and was placed on medical leave by her physician from June 23, 2024, to June 28, 2024.

31.

As a favor to Defendant, Plaintiff returned to work on June 27, 2024, to close her department when she was notified that they did not have anyone else to close that night.

32.

Plaintiff properly initiated a claim for leave through Defendant's third-party leave administrator, Sedgwick Claims Management Services ("Sedgwick").

33.

Plaintiff's leave for her own serious medical condition was approved.

34.

On August 15, 2024, Plaintiff had a total of 4.5 attendance points, which was below the 5-point threshold for termination under Defendant's policy.

35.

On August 15, 2024, at approximately 3:24 PM, Plaintiff was terminated by an hourly team lead, Alan Cumbess.

36.

Plaintiff's General Manager, Mr. Smith, was on vacation at the time of the termination.

37.

Defendant subsequently created a falsified Separation Notice, post-dating Plaintiff's termination to August 16, 2024.

38.

The purpose of falsifying the termination date was to manufacture a pretextual reason for Plaintiff's termination by retroactively assessing a half-point for leaving "early" on August 15th (the day she was fired) and one full point for a "no-show" on August 16th, which would bring her point total above five.

39.

In text messages to Mr. Cumbess and Mr. Smith immediately following her termination, Plaintiff protested the falsified date, stating, "Gave you a reason to add a half a point for the 15th and a whole point for the 16th which put me pointed out on the day you actually fired me. I had 4 1/2 points."

40.

In response, Mr. Smith admitted to the date manipulation, stating, "You were taken out of the system on the 16th which is why it's like that."

41.

The Separation Notice falsely states the reason for separation was "Policy Violation – Attendance. Leave of Absence extension was denied."

42.

This was pretextual, as Plaintiff's June 2024 FMLA leave was approved, and she was not at a terminable point level on the actual date of her termination.

43.

Defendant subjected Plaintiff, a white employee, to disparate treatment on the basis of her race.

44.

Upon information and belief, Defendant did not terminate similarly situated Black employees who had accrued more attendance points than Plaintiff. Plaintiff is aware of and has evidence of Black employees with six (6) and seven (7) points who were allowed to keep their jobs, while she was terminated with 4.5 points.

45.

On August 15, 2024, at 4:35 PM, Plaintiff contacted Walmart's Ethics hotline to report her wrongful termination and the falsification of her employment records.

46.

Defendant's pattern of creating a hostile work environment is further evidenced by its treatment of Plaintiff's former white co-worker, Stacey (last name unknown). Upon information and belief, Stacey was subjected to a constant barrage of harassment by three Black supervisors—Darlene (LNU), Janice (LNU), and HR representative Deborah Tanner—to the point that she developed severe anxiety requiring medication.

47.

Defendant's selective and discriminatory enforcement of its policies is further demonstrated by its treatment of a male employee who reportedly dropped a firearm in the employee break room. This employee was not terminated for this serious safety violation but was later terminated only after accumulating eleven (11) attendance points, more than double the points Plaintiff had when she was unlawfully terminated.

48.

Although Defendant purports to provide a legitimate non-discriminatory reason for the adverse action, this reason is a pre-text.

49.

Others outside of Plaintiff's protected class – black employees and/or employees who did not request protected medical leave under the FMLA – were treated differently.

## **CLAIMS FOR RELIEF**

## **COUNT I: FMLA INTERFERENCE (29 U.S.C. § 2615(a)(1))**

50.

Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

51.

At all relevant times, Plaintiff was an "eligible employee" and Defendant was a covered "employer" as defined by the FMLA, 29 U.S.C. § 2611.

52.

Plaintiff was entitled to take job-protected leave under the FMLA to care for her daughter, who was suffering from a "serious health condition" as defined by the FMLA.

53.

Defendant, through its agent, HR representative Deborah Tanner, interfered with, restrained, and denied Plaintiff's exercise of her FMLA rights by unlawfully denying her request for leave in or around October 2023.

54.

As a direct result of Defendant's unlawful interference, Plaintiff was improperly assessed 4.5 attendance points, which made her vulnerable to termination and contributed to the pretextual basis for her eventual termination.

55.

As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages including, but not limited to, lost wages, benefits, and other compensation, and is entitled to liquidated damages for Defendant's willful violation of the FMLA.

### COUNT II: FMLA RETALIATION (29 U.S.C. § 2615(a)(2))

56.

Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

57.

Plaintiff engaged in activity protected by the FMLA when she took approved, FMLA-qualifying leave for her own serious health condition (COVID-19) from approximately June 21, 2024, to June 28, 2024.

58.

Defendant subjected Plaintiff to an adverse employment action when it terminated her employment on August 15, 2024.

59.

A causal connection exists between Plaintiff's protected activity and her termination, as evidenced by the temporal proximity between her FMLA leave and termination, and by Defendant's actions to create a pretextual basis for her termination immediately following her leave.

60.

Defendant's proffered reason for termination—violation of the attendance policy due to a "denied" leave of absence extension—was false and pretext for FMLA retaliation. Plaintiff's leave was approved by Sedgwick, and her attendance points were below the terminable threshold on the date she was actually fired.

61.

As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has suffered damages including lost wages, benefits, emotional distress, and other compensatory and liquidated damages.

**COUNT III: RACE DISCRIMINATION IN VIOLATION OF TITLE VII**

62.

Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

63.

Plaintiff is a member of a protected class on the basis of her race (White).

64.

Plaintiff was qualified for her position and was performing her job satisfactorily, having worked for Defendant for nearly five years in multiple roles.

65.

Despite her qualifications and satisfactory performance, Plaintiff suffered an adverse employment action when she was terminated on August 15, 2024.

66.

Plaintiff was treated less favorably than similarly situated employees outside of her protected class. Upon information and belief, Defendant knowingly

permitted Black employees with six (6), seven (7), and even eleven (11) attendance points to remain employed while terminating Plaintiff, a white employee, with only 4.5 points.

67.

Defendant's stated reason for Plaintiff's termination (attendance) was a pretext for unlawful discrimination based on her race.

68.

As a direct and proximate result of Defendant's unlawful and discriminatory conduct, Plaintiff has suffered damages including lost wages, lost benefits, emotional distress, and other compensatory damages.

### COUNT IV: RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981

69.

Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

70.

Defendant intentionally discriminated against Plaintiff on the basis of her race by terminating her employment, thereby depriving her of her right to make and enforce contracts to the same extent as is enjoyed by non-white citizens.

71.

Defendant subjected Plaintiff to disparate treatment based on her race by selectively and discriminatorily enforcing its attendance policy, terminating her for having 4.5 attendance points while retaining Black employees with significantly more points.

72.

Defendant's actions, including the racially charged comments made by its HR representative and its disparate application of company policy, demonstrate that Defendant's conduct was willful, malicious, and taken with reckless indifference to Plaintiff's federally protected rights.

73.

As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages including lost wages, lost benefits, emotional distress, and other compensatory and punitive damages.

**WHEREFORE**, Plaintiff judgment as follows:

(a)      General damages for mental and emotional suffering caused by Defendant's misconduct;

(b)   Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts, including ratification, condonation and approval of said acts;

(c)   Special damages and/or liquidated damages for lost wages and benefits and prejudgment interest thereon;

(d)   Reasonable attorney's fees and expenses of litigation;

(e)   Trial by jury as to all issues;

(f)   Prejudgment interest at the rate allowed by law;

(g)   Declaratory relief to the effect that Defendant Wal-Mart Stores East, LP, has violated Plaintiff's statutory rights;

(h)   Injunctive relief of reinstatement, or front pay in lieu thereof, and prohibiting Defendant Wal-Mart Stores East, LP, from further unlawful conduct of the type described herein; and

(i)   All other relief to which she may be entitled.

Respectfully submitted the 3rd day of December, 2025.

**BARRETT & FARAHANY**

/s/ *Matthew C. Billips*
Matthew C. Billips
Georgia Bar No. 057110

*Attorneys for Michelle Smith*

2921 Piedmont Road
Atlanta, GA 30305
(404) 214-0120
matt@justiceatwork.com